1  Andrew S. Tulumello (Bar No. 196484)
   drew.tulumello@weil.com
2  Arianna Scavetti (*pro hac vice* forthcoming)
   arianna.scavetti@weil.com
3  Claire L. Chapla (Bar No. 314255)
   claire.chapla@weil.com
4  WEIL, GOTSHAL & MANGES LLP
   2001 M Street NW, Suite 600
5  Washington, DC 20036
   Tel: (202) 682-7000
6
7  (*additional counsel listed on signature page*)

8              UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF CALIFORNIA
9              SAN FRANCISCO DIVISION

10

11 | THE PEOPLE OF THE STATE OF CALIFORNIA,    Case No. 3:26-cv-00183-JST
   | acting by and through San Francisco City Attorney
12 | DAVID CHIU,                               **DEFENDANTS' OPPOSITION TO**
                                              **PLAINTIFF'S MOTION TO**
13 |                    Plaintiff,            **REMAND**

14 |        v.                                 Hearing Date:  April 23, 2026
                                              Hearing Time:  2:00 PM
15 | THE KRAFT HEINZ COMPANY; MONDELEZ
   | INTERNATIONAL, INC.; POST HOLDINGS,
16 | INC.; THE COCA-COLA COMPANY; PEPSICO,
   | INC; GENERAL MILLS, INC.; NESTLE USA,
17 | INC.; KELLANOVA; WK KELLOGG CO.; MARS,
   | INCORPORATED; CONAGRA BRANDS, INC.;
18 | and DOES 1–50,
19
20 |                    Defendants.
21
22
23
24
25
26
27
28

# **<u>TABLE OF CONTENTS</u>**

INTRODUCTION ........................................................................................................1

BACKGROUND .........................................................................................................2

LEGAL STANDARD ..................................................................................................3

ARGUMENT ..............................................................................................................3

    I.      Precedent and the Face of the Complaint Confirm that San Francisco Is the Real Party in Interest ...................................................................................4

          A.      The Real Party in Interest Determines Diversity Jurisdiction .........................4

          B.      San Francisco Is the Real Party in Interest ....................................6

    II.     The State Is Not a Real Party in Interest ................................................8

          A.      The State Has No Interest as an Artificial Person...........................8

          B.      San Francisco's Contrary Authorities Are Inapposite or Unpersuasive ........10

          C.      San Francisco's Remaining Arguments Are Misplaced ..............................14

CONCLUSION ..........................................................................................................16

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Atchison, T. & S.F. Ry. Co. v. Phillips*,
  176 F. 663 (9th Cir. 1910) ....................................................................................8

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
  238 F. Supp. 3d 723 (E.D. Pa. 2017) ..................................................................11

*California v. Exide Techs.*,
  2014 WL 12607708 (C.D. Cal. Apr. 9, 2014) ...................................................13, 14

*California v. HomeAway.com, Inc.*,
  2023 WL 2497862 (C.D. Cal. Mar. 17, 2023) ....................................................13

*California v. N. Tr. Corp.*,
  2012 WL 12888851 (C.D. Cal. Dec. 19, 2012) ................................................11, 15

*California v. N. Tr. Corp.*,
  2013 WL 1561460 (C.D. Cal. Apr. 10, 2013) ......................................................5

*California v. Purdue Pharma L.P.*,
  2014 WL 6065907 (C.D. Cal. Nov. 12, 2014) ..................................................13, 14

*California ex rel. Chiu v. InComm Fin. Servs., Inc.*,
  2024 WL 1281330 (C.D. Cal. Mar. 26, 2024) ..................................................11, 13

*County of San Mateo v. Monsanto Co.*,
  644 F. Supp. 3d 566 (N.D. Cal. 2022) .........................................................11, 12, 14

*Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*,
  642 F.3d 728 (9th Cir. 2011) ................................................................. *passim*

*District of Columbia v. Transamerica Ins. Co.*,
  797 F.2d 1041 (D.C. Cir. 1986) .....................................................................5, 7, 9

*In re Facebook, Inc., Consumer Privacy User Profile Litigation*,
  354 F. Supp. 3d 1122 (N.D. Cal. 2019) ..............................................................12

*Geeslin v. Merriman*,
  527 F.2d 452 (6th Cir. 1975) ........................................................................6, 9

*People of California ex rel. Herrera v. Check 'N Go of Cal., Inc.*,
  2007 WL 2406888 (N.D. Cal. Aug. 20, 2007) .....................................................11

*Hunter v. Philip Morris USA*,
  582 F.3d 1039 (9th Cir. 2009) ........................................................................3

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) .................................................................................................13

*California ex rel. L.A. City Att'y v. Monsanto Co.*,
   2022 WL 2355195 (C.D. Cal. June 30, 2022) ...........................................................12

*Hawaii, ex rel. Louie v. Bristol-Myers Squibb Co.*,
   2014 WL 3427387 (D. Haw. July 15, 2014)................................................................8

*Md. Stadium Auth. v. Ellerbe Becket Inc.*,
   407 F.3d 255 (4th Cir. 2005) ...........................................................................6, 7, 9

*Missouri, Kansas & Texas Railway Co. v. Hickman*,
   183 U.S. 53 (1901)............................................................................................. *passim*

*Moor v. Alameda County*,
   411 U.S. 693 (1973)...................................................................................................3, 15

*Nevada v. Bank of America Corp.*,
   672 F.3d 661 (9th Cir. 2012) ............................................................................. *passim*

*Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n*,
   598 F.2d 1303 (3d Cir. 1979)....................................................................................5, 8

*Robertson v. Jordan River Lumber Co.*,
   269 F. 606 (5th Cir. 1921) ...............................................................................6, 9, 12

*Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*,
   965 F. Supp. 2d 1141 (E.D. Cal. 2013)....................................................................13

*Washington v. Facebook, Inc.*,
   2018 WL 5617145 (W.D. Wash. Oct. 30, 2018) ........................................................8

**Statutes**

28 U.S.C. § 1332 ..............................................................................................................3

28 U.S.C. § 1441 ..............................................................................................................3

Cal. Bus. & Prof. Code § 17206(f) .......................................................................3, 7, 15

## **INTRODUCTION**

The City and County of San Francisco ("San Francisco") brought this action asserting public nuisance and unfair business practice claims against several well-known food and beverage manufacturers, challenging their alleged development and marketing of so-called "ultra processed foods," an ill-defined and seemingly vast range of different foods and beverages. The litigating parties are completely diverse and the matter in controversy exceeds $75,000. This case meets all the requirements for federal jurisdiction and was properly removed to this Court.

In an effort to defeat jurisdiction and obtain remand, San Francisco argues that its complaint and the relevant statutes nominally identify the State of California as the plaintiff, meaning there is no diversity between the parties. But when evaluating diversity, substance—not form—controls. The Court must determine which entity (San Francisco or the State) is the "real party in interest" by examining the essential nature of the proceeding. Here, according to Plaintiff's own allegations, San Francisco is the party with a real, concrete interest in the litigation. San Francisco's city and county attorney filed the action, with no apparent involvement by the California Attorney General, in San Francisco to address supposed harms arising in San Francisco. And much of the injunctive relief—not to mention *all* of the monetary relief—would flow to San Francisco, not the State.

San Francisco's argument that the State is the real party in interest because it has an interest in the enforcement of its consumer protection laws runs headlong into binding precedent. The leading Supreme Court case on this issue—*Missouri, Kansas & Texas Railway Co. v. Hickman*, 183 U.S. 53 (1901) ("*Missouri Railway*")—held that a State's general "governmental interest in the welfare of all its citizens . . . and in securing compliance with all its laws" is not sufficient to render the State a real party in interest to a suit. *Id.* at 60. San Francisco does not even mention *Missouri Railway* in its motion, effectively conceding that it undercuts its bid for remand. And San Francisco likewise overlooks Ninth Circuit precedent applying *Missouri Railway*, in which the Court held that a State's quasi-sovereign interest in "public nuisances and the economic well-being of its citizens"—*i.e.*, the precise state interest San Francisco claims here—does not defeat diversity. *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 737 n.2 (9th Cir. 2011).

San Francisco's reliance on several district court decisions that have remanded cases for lack

of diversity jurisdiction where a city or county has pursued claims in the name of the State is unavailing. Some of those cases (including one decided by this Court) are plainly inapposite because they concerned state property or sought fundamentally statewide relief. Others should not be followed because they fail to account for the binding precedent noted above and were therefore wrongly decided. And none of the cases cited by San Francisco addresses the Ninth Circuit's on-point holding that a State is not the real party in interest for claims regarding "public nuisances and the economic well-being of its citizens." *Lucent*, 642 F.3d at 737 n.2.

In short, the face of the complaint clearly indicates that San Francisco, not the State, is the real plaintiff. There is complete diversity, and the motion to remand should be denied.

## **BACKGROUND**

Defendants are eleven food and beverage manufacturers from a variety of States. *See* Dkt. 1-2 ("Compl.") ¶¶ 16–40. No Defendant resides in California. *See id.* ¶¶ 16, 19, 22, 25, 27, 29, 31, 33–34, 37, 39; Dkt. 1 ("Notice of Removal") ¶¶ 33–43.

San Francisco's complaint asserts two claims: one for public nuisance and one for unlawful, unfair, or fraudulent business practices under California's Unfair Competition Law ("UCL"). *See* Compl. ¶¶ 234–56. The supposed basis for these claims is the contention that Defendants have designed and marketed their food and beverage products—particularly those products that San Francisco calls "ultra-processed foods"—in a way that is harmful to the health of consumers. *See id.* ¶¶ 236, 249–51. The complaint sweeps across thousands of diverse foods and beverages, ranging from rice to sports drinks to yogurt. The complaint claims, at a high level, that "ultra-processed foods" cause harmful health effects and includes a handful of allegations about Defendants' purported research, development, and marketing practices for some of their products. *See id.* ¶¶ 49–218.

Following these allegations about purported "UPFs," the complaint discusses the alleged effects of Defendants' conduct in San Francisco in particular. *See id.* ¶¶ 219–33. For example, the complaint alleges that "Defendants' conduct has contributed to a serious health crisis in San Francisco," which has "creat[ed] an environment that was and is harmful to the health of San Francisco residents." *Id.* ¶¶ 219–20. It discusses diabetes and obesity rates in San Francisco, *see*

*id.* ¶¶ 221, 223, 226, 228, as well as treatment and other healthcare costs in San Francisco, *see id.* ¶ 231—all local issues the complaint seeks to blame on Defendants' so-called "UPFs."

Although the complaint nominally seeks "statewide" relief, the allegations and attestations indicate otherwise.  In particular, San Francisco seeks:

- "[a]n order enjoining Defendants from maintaining the public nuisance in San Francisco," *id.* at 60;
- "[c]osts to abate the public nuisance Defendants created or assisted in creating in San Francisco," *id.*; and
- an award of civil penalties that, by statute, would flow only to San Francisco, *id.*; *see also* Cal. Bus. & Prof. Code § 17206(f).

Defendants timely removed this action on diversity grounds.  *See* Notice of Removal ¶ 3.  San Francisco has moved to remand.  *See* Dkt. 50 ("Mot.").

## LEGAL STANDARD

Under 28 U.S.C. § 1332(a), district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States."  *See also id.* § 1441(a) ("[A]ny civil action" brought in a state court "may be removed" when "original jurisdiction" exists.).  While "a State is not a 'citizen'" for diversity purposes, "a political subdivision of a State, unless it is simply the arm or alter ego of the State, *is* a citizen of the State for diversity purposes."  *Moor v. Alameda County*, 411 U.S. 693, 717 (1973) (emphasis added) (quotation marks omitted).  The removing party bears the burden of showing that removal is proper.  *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009).

## ARGUMENT

Whether the parties are diverse turns on who the real plaintiff in interest is in this lawsuit: San Francisco or the State of California.  Precedent points to a clear answer.  San Francisco brought this lawsuit expressly to vindicate its interests and those of its residents.  The State's quasi-sovereign interest in the enforcement of consumer protection laws does not render the State the real party in interest.  Accordingly, there is complete diversity here, no Defendant is a citizen of the forum State, and the amount in controversy undisputedly exceeds $75,000.  Removal was proper.

I.    **Precedent and the Face of the Complaint Confirm that San Francisco Is the Real Party in Interest**

A.    **The Real Party in Interest Determines Diversity Jurisdiction**

For more than a century, the Supreme Court has recognized that diversity jurisdiction is determined not by the nominal parties to a lawsuit, but by the identity of the parties who have a real, concrete interest in the litigation.  A party therefore may not defeat diversity jurisdiction by nominally asserting a claim on behalf of a State when, in reality, the party seeks to vindicate its own interests.

In *Missouri Railway*, the Supreme Court considered whether a lawsuit brought by a state board of railroad commissioners could be removed to federal court on diversity grounds.  183 U.S. at 58–59.  The Court held that removal was proper because the commissioners, rather than the State, were the real parties in interest.  *See id.* at 61.  The Court observed that the case was "not an action to recover any money for the state" and "[i]ts results w[ould] not inure to the benefit of the state *as a state* in any degree."  *Id.* at 59 (emphasis added).  It acknowledged that a State "has a governmental interest in the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws."  *Id.* at 60.  "But such general governmental interest," the Court explained, "is not that which makes the state, as an organized political community, a party in interest in the litigation."  *Id.*  If such a general governmental interest were sufficient, then "the state would be a party in interest in all litigation; because the purpose of all litigation is to preserve and enforce rights and secure compliance with the law of the state."  *Id.*  Instead, a State is the real party in interest only where the claimed interest is "one in the state as an artificial person."  *Id.*  The quintessential example of such an interest is where an action is brought for the "sole benefit" of the State and the State "alone [is] to be benefited by the recovery."  *Id.* at 59.

The Ninth Circuit has twice examined *Missouri Railway*, each time confirming its basic principles.  First, in *Lucent*, the Ninth Circuit held that the State was not the real party in interest in a case brought by a state agency seeking to remedy alleged discrimination by an employer.  642 F.3d at 735–40.  Reasoning that a State's "governmental interest in the welfare of all its citizens" is insufficient to make the State "a party in interest in [] litigation," the Court held that a party may

not defeat diversity jurisdiction by asserting a State's quasi-sovereign interests in "public nuisances and the economic well-being of its citizens." *Id.* at 737 & n.2 (citation omitted). That is because the "use of quasi-sovereign interest to satisfy *Missouri Railway*'s unique relief requirement is contradictory to the very language of that opinion and has never been suggested or endorsed by the Supreme Court." *Id.* at 737 n.2. This analysis sets forth a "rigorous standard" that applies whenever a party claims the State is the real party in interest for purposes of diversity. *California v. N. Tr. Corp.*, 2013 WL 1561460, at *2 (C.D. Cal. Apr. 10, 2013).

Second, in *Nevada v. Bank of America Corp.*, 672 F.3d 661 (9th Cir. 2012), the Court held that the State of Nevada was the real party in interest in a *parens patriae* lawsuit brought by the Nevada Attorney General to remedy alleged statewide fraudulent mortgage practices, including a violation of a prior consent judgment entered into with the State. But in so doing, the Court affirmed the rule that a State is the real party in interest only if, considering the case "as a whole," the State has a "specific, concrete interest" that is "separate and distinct" from that of the party bringing the action, taking into account "the essential nature and effect of the proceeding." *Id.* at 670 (quotation marks omitted). The Court also confirmed that diversity is not defeated "if the State ha[s] only the general interest it holds on behalf of all its citizens and their welfare." *Id.* (quotation marks omitted). The Court therefore held that the State of Nevada was the real party in interest, based on unique facts that established the State's "specific, concrete interest." *Id.* Most significantly, the Court emphasized the fact that Nevada had been "particularly hard-hit by the current mortgage crisis" and therefore had a uniquely heightened interest. *Id.* In addition, the Court highlighted the fact that Nevada sought "substantial relief that is available to it alone," including enforcement of a consent order, civil penalties not available to private parties, and the costs of its investigation. *Id.* at 670–72. The Court did not purport to disagree with any aspect of *Lucent*.

Other courts of appeals also have faithfully applied *Missouri Railway*. Courts have held that the State was not the real party in interest where a judgment would neither inure to the benefit of nor draw from the state treasury. *See District of Columbia v. Transamerica Ins. Co.*, 797 F.2d 1041, 1047 (D.C. Cir. 1986); *Ramada Inns, Inc. v. Rosemount Mem'l Park Ass'n*, 598 F.2d 1303, 1306–07 (3d Cir. 1979). By contrast, the State may be a real party in interest if the judgment will affect

the state treasury, *see Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 263–64 (4th Cir. 2005); *Geeslin v. Merriman*, 527 F.2d 452, 455–56 (6th Cir. 1975), or if the case implicates property owned by the State, *see Robertson v. Jordan River Lumber Co.*, 269 F. 606, 607 (5th Cir. 1921).

## B.    San Francisco Is the Real Party in Interest

The real party in interest is determined by assessing the "essential nature" of the case as a "whole," including by examining the core allegations. *Nevada*, 672 F.3d at 670. And here, the allegations on the face of the complaint confirm that San Francisco brought this lawsuit to vindicate its own interests. Applying the test articulated by Supreme Court and the Ninth Circuit, San Francisco is the real party in interest.

The allegations of purported harms are focused on San Francisco. For example, in the first paragraph of the complaint containing allegations about the relationship between Defendants' alleged conduct and the plaintiff's interest, San Francisco asserts that Defendants' alleged "conduct has significantly contributed to a serious public health problem *in San Francisco*." Compl. ¶ 12 (emphasis added). After several hundred allegations concerning Defendants' nationwide production and marketing of food and beverage products generally, the complaint contains only one single section discussing the relevance of that alleged conduct to the claims asserted here. *See id.* ¶¶ 219–33. That section—entitled "UPF Have Contributed to a Public Health Crisis *in San Francisco*," *id.* at 54 (emphasis added)—focuses on the alleged effects so-called UPFs have had on San Francisco specifically including allegations that:

- "Defendants' conduct has contributed to a serious health crisis in San Francisco," *id.* ¶ 219;

- "Public health data from 2025 shows that 9% of San Francisco residents have diabetes, and 18% of San Francisco adults are obese," *id.* ¶ 221;

- Defendants' alleged manufacturing and marketing "tactics have predictably impacted San Francisco," *id.* ¶ 223;

- "Defendants' promotion of UPF consumption is also a key driver of the rate of diabetes in San Francisco," *id.* ¶ 225;

- "The impact on San Francisco is felt most acutely in its eastern ZIP Codes," *id.* ¶ 230; and

- "In an effort to curb the harmful impacts of this crisis, San Francisco has initiated diabetes prevention programs for its employees," *id.* ¶ 232.

These allegations concern only San Francisco, not the State. Thus, the "essential nature" of the proceeding concerns San Francisco. *Nevada*, 672 F.3d at 670 (citation omitted).

The request for relief points in the same direction. San Francisco seeks "[a]n order enjoining Defendants from maintaining the public nuisance *in San Francisco*" and "[c]osts to abate the public nuisance Defendants created or assisted in creating *in San Francisco*." Compl. at 60 (emphases added). Moreover, San Francisco seeks civil penalties under the UCL, which by statute will flow entirely to "the treasurer of the city and county" for "exclusive use by the city attorney," not the State. Cal. Bus. & Prof. Code § 17206(f). While San Francisco tacks on an additional request for statewide injunctive relief, *see* Compl. at 60, such additional relief does not alter "the essential nature and effect of the proceeding," which is to vindicate alleged harms in San Francisco through relief principally directed at San Francisco, *Nevada*, 672 F.3d at 670 (citation omitted).

San Francisco argues that the civil penalties it seeks do not render it the real party in interest, because any such civil penalties "must be used for the exclusive use . . . for the enforcement of consumer protection laws," claiming that "where the money flows is less important than what it is used for." Mot. at 8 (citation omitted). That reasoning is circular—the very question before the Court is whether litigation to enforce general consumer protection interests is the kind of discrete, sovereign interest sufficient to render the State a real party in interest. *See Lucent*, 642 F.3d at 737–39. The State does not become a real party in interest to a lawsuit just because the plaintiff intends to spend any recovered amounts to advance a purported public interest. What matters here is that any civil penalties would go *to* San Francisco for "exclusive use *by*" San Francisco. Cal. Bus. & Prof. Code § 17206(f) (emphasis added). That is why courts of appeals focus on the destination (or origin) of the funds, not their intended use. *See Md. Stadium Auth.*, 407 F.3d at 263–64 (recovery by the State of any successful award indicated the State was the real party in interest); *District of Columbia*, 797 F.2d at 1047 (pecuniary interest for subcontractor but not District of Columbia

suggested subcontractor was real party in interest); *see also Ramada Inns*, 598 F.2d at 1306–07 (absence of any potential effect on public funds suggested the State was not a real party in interest).

That San Francisco, not the State, is prosecuting and controls this litigation confirms San Francisco's status as the real party in interest. The prosecuting party in "absolute control of the suit" is often the real party in interest. *Atchison, T. & S.F. Ry. Co. v. Phillips*, 176 F. 663, 668 (9th Cir. 1910). Even the *dissent* in *Lucent* agrees, noting that it is "hornbook law" that "a party is an interested party for purposes of diversity jurisdiction when it has some control over the litigation." 642 F.3d at 749 (Ikuta, J., dissenting). Here, San Francisco is responsible for the prosecution of this litigation. This is therefore not a case where, like in *Nevada*, a state officer or attorney general brought and controls the litigation. 672 F.3d at 664. This is a San Francisco case in all respects, and it is therefore removable on diversity grounds.

## II.   The State Is Not a Real Party in Interest

San Francisco nonetheless maintains that the State of California is the real party in interest. *See* Mot. at 6–9. But binding precedent forecloses any contention that the State has an interest in this case as an artificial person. The district court cases that San Francisco cites either arose under different circumstances or incorrectly interpreted controlling precedent. And none of San Francisco's other arguments has merit.

### A.   The State Has No Interest as an Artificial Person

San Francisco identifies no interest of the State "as an artificial person" in this litigation. *Missouri Railway*, 183 U.S. at 60. Unlike in *Nevada* and other cases cited by San Francisco, the State (via its Attorney General) did not bring this lawsuit and does not control it. *Cf.* 672 F.3d at 664 (case brought by Nevada Attorney General); *Hawaii, ex rel. Louie v. Bristol-Myers Squibb Co.*, 2014 WL 3427387, at *1 (D. Haw. July 15, 2014) (case brought by Hawaii Attorney General); *Washington v. Facebook, Inc.*, 2018 WL 5617145, at *2 (W.D. Wash. Oct. 30, 2018) (case brought by Washington Attorney General). The State is not seeking to enforce any sovereign contractual rights. *Cf. Nevada*, 672 F.3d at 670. San Francisco does not allege that California as a whole has been "particularly hard-hit" by the alleged effects of Defendants' conduct, *id.*; if anything, the complaint emphasizes the specific harm to *San Francisco*, *see* Compl. ¶¶ 219–33. The State has no

pecuniary interest in this litigation, *cf. Nevada*, 672 F.3d at 671–72; *see also Md. Stadium Auth.*, 407 F.3d at 263–64; *Geeslin*, 527 F.2d at 455, nor any property interest more generally, *cf. Robertson*, 269 F. at 607.  And San Francisco does not seek any relief uniquely available to the State, instead seeking civil penalties that would be payable to the city and county.  *Cf. Nevada*, 672 F.3d at 672.

Although San Francisco acknowledges that a "generalized concern for the welfare of its citizens" does not render the State a real party in interest to this suit, Mot. at 6, it argues that the State has an interest in enforcing consumer protection laws.  Yet all of the supposedly "specific, concrete interest[s]" it goes on to invoke are nothing more than generalized concerns that both the Supreme Court and the Ninth Circuit have held are insufficient to defeat diversity.  *Id.*; *see Missouri Railway*, 183 U.S. at 60; *Lucent*, 642 F.3d at 737; *Nevada*, 672 F.3d at 670.  For example, San Francisco argues that this lawsuit is meant "to protect the public," "enforc[e] its consumer protection laws," and abate "a serious threat to the health and safety of all Californians."  Mot. at 6–7 (quotation marks omitted).  *Missouri Railway*, however, held that such a "governmental interest in the welfare of all its citizens . . . and in securing compliance with all its laws" is not sufficient to render a State the real party in interest.  183 U.S. at 60.  San Francisco does not cite *Missouri Railway* even once.

San Francisco's argument also overlooks the Ninth Circuit's conclusion in *Lucent* that "a state's quasi-sovereign interest" does not "render it a real party in the controversy."  642 F.3d at 737 n.2.  The Court observed that the term "quasi-sovereign" in this context "consists of a set of interests that the State has in the well-being of its populace, which can include, for example, *public nuisances and the economic well-being of its citizens*."  *Id.* (emphasis added and brackets, internal quotation marks, and citation omitted).  But "[t]his use of quasi-sovereign interest to satisfy *Missouri Railway*'s unique relief requirement is contradictory to the very language of that opinion and has never been suggested or endorsed by the Supreme Court."  *Id.*  Moreover, as other courts have also recognized, allowing such interests to control the real-party-in-interest inquiry "would effectively render *Missouri Railway* moribund."  *Id.* (citing *Md. Stadium Auth.*, 407 F.3d at 261–63; *District of Columbia*, 797 F.2d at 1047); *see also Nevada*, 672 F.3d at 670 (holding that a State's "general interest it holds on behalf of all its citizens and their welfare" is not sufficient).

San Francisco's remand motion relies on *the exact* quasi-sovereign interests the Ninth Circuit held insufficient in *Lucent* and *Nevada*—namely, a State's interests in "public nuisances and the economic well-being of its citizens," *Lucent*, 642 F.3d at 737 n.2, and a State's "general interest it holds on behalf of all its citizens and their welfare," *Nevada*, 672 F.3d at 670. Indeed, San Francisco's claim for public nuisance is precisely the type of claim the Court held in *Lucent* would *not* render the State a real party in interest. Notably, the complaint asserts in one paragraph that the public nuisance claim is brought only "on behalf of the City and County of San Francisco," not the State, Compl. ¶ 14, though San Francisco claims otherwise elsewhere, *see id.* at 59. Similarly, the only interest the State could assert for the UCL claim is again a general, quasi-sovereign interest in the general welfare of its citizens. *See Lucent*, 642 F.3d at 737 n.2. If *Lucent* and *Nevada* mean *anything*, they must foreclose San Francisco's theory based on quasi-sovereign interests.

San Francisco attempts to cabin *Lucent* by emphasizing the uniquely individual relief allegedly sought there. *See* Mot. at 10–11. However, *Lucent* did not turn solely on the nature of the relief being sought. Rather, before even addressing the nature of the requested relief, the Ninth Circuit clearly held that a State's quasi-sovereign interests in "public nuisances and the economic well-being of its citizens" are not sufficient to render the State a real party in interest. 642 F.3d at 737 n.2. Moreover, the relief sought in *Lucent* extended well beyond what San Francisco suggests: The plaintiff there sought an order directing the defendant to cease and desist from discriminating against *all* employees on the basis of disability, develop and disseminate a *policy* regarding anti-discrimination obligations, train *all* management employees about the defendant's duties, and post an order in *all* work locations stating that the defendant had violated anti-discrimination law. *See id.* at 739. While many of these remedies may have been equally available to the individual plaintiff had he brought suit in his own name, *see id.*, they did not inure solely (or even primarily) to the benefit of the individual. Nevertheless, the Court held that the State was not a real party in interest. *See id.* at 740. That same conclusion holds true here.

## B.    San Francisco's Contrary Authorities Are Inapposite or Unpersuasive

San Francisco cites a number of district court cases remanding claims brought in the name of the People of California. *See* Mot. at 1–2. However, other courts have faithfully applied *Lucent*

and *Nevada* and rejected its arguments. *See, e.g.*, *California v. N. Tr. Corp.*, 2012 WL 12888851 (C.D. Cal. Dec. 19, 2012) ("[C]haracterizing the [UCL] claim as a 'civil law enforcement action' fails to satisfy the Ninth Circuit's recent requirements of specificity and concreteness." (citing *Lucent*, 642 F.3d at 737, and *Nevada*, 672 F.3d at 670–72)); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 238 F. Supp. 3d 723, 730 (E.D. Pa. 2017) ("The Court agrees with the R & R that *Lucent* supports a finding that the real party in interest is the County" where "the relief sought would not inure to the benefit of the state alone."). And the cases San Francisco does cite do not support its motion to remand.

*First*, not one of the cases cited by San Francisco engages with—or even acknowledges—the Ninth Circuit's holding in *Lucent* that quasi-sovereign interests are insufficient to render the State a real party in interest. In fact, one of the cases on which San Francisco relies *expressly invoked* the State's purported quasi-sovereign interest to resolve the real-party-in-interest question. *See California ex rel. Chiu v. InComm Fin. Servs., Inc.*, 2024 WL 1281330, at *3 (C.D. Cal. Mar. 26, 2024) (contending that a State's "quasi-sovereign interest in enforcing state law" is "sufficient when that interest is the primary one in the case"); *cf. also In re Avandia*, 238 F. Supp. 3d at 729 (rejecting plaintiff's cited authorities because "four of the cases cited by Plaintiff pre-date *Lucent*, and therefore do not apply the governing standard," and "[o]f the cases that came after *Lucent*, some inexplicably do not mention *Lucent*"). That is wrong as a matter of binding Ninth Circuit precedent. *Lucent*'s discussion of a State's generalized interest in the well-being of its citizens as insufficient to establish real-party-in-interest status is dispositive, yet neither San Francisco nor the cases it cites address it.[1]

*Second*, some of San Francisco's cases involved "concrete" (indeed, undeniable) statewide interests and are therefore readily inapposite. For example, in *County of San Mateo v. Monsanto Co.*, 644 F. Supp. 3d 566 (N.D. Cal. 2022), San Mateo County and various cities and towns within that county initiated a nuisance lawsuit against several companies arising out of their alleged

---

[1] One of San Francisco's authorities predates *Lucent* and *Nevada* entirely. *See People of California ex rel. Herrera v. Check 'N Go of Cal., Inc.*, 2007 WL 2406888 (N.D. Cal. Aug. 20, 2007).

pollution of the San Francisco Bay with various chemicals.  Importantly, this Court reaffirmed that "[s]tanding alone, a state's general, governmental interests—including protecting the welfare of all its citizens, compelling obedience to the legal orders of all its officials, and securing compliance with all its laws—are *insufficient*" to render a state a real party in interest. *Id.* at 570 (citing *Lucent*, 642 F.3d at 737) (emphasis added). That principle did not defeat diversity jurisdiction in the circumstances there, because "California is directly harmed by ongoing pollution of one of its inland, navigable waterways, which it holds in trust for the benefit of the people," and because "abatement in the County and Municipalities [of the polluting activities] will benefit people throughout California." *Id.* at 571–72 (citation omitted); *see also id.* at 572 ("[T]he resulting public health risk is widespread because numerous communities throughout California rely on the San Francisco Bay as a food source or for recreation.").  Injury to a vested property interest is one of the quintessential grounds upon which a State may claim to be a real party in interest.  *See Robertson*, 269 F. at 607.  Here, by contrast, San Francisco identifies no such discrete property interest on behalf of the State and cannot claim that abatement of Defendants' conduct in San Francisco will benefit the rest of the State.

Additionally, this Court emphasized that the counties pursuing the litigation in the *Monsanto* case had "incurred and will continue to incur substantial costs in order to comply with the numerous requirements" of a permit issued by a state agency.  644 F. Supp. 3d at 572.  For that reason, "the interests of Plaintiffs and California [were] intertwined under the circumstances of [the] case," and the Court reasoned that "any relief secured by Plaintiffs in th[at] lawsuit that aid[ed] Plaintiffs' compliance with, satisfie[d] Plaintiffs' obligations under, or further[ed] the purposes of that [agency's regulations] w[ould] necessarily vindicate California's interest." *Id.*  There is no such regulatory scheme here.

Plaintiff's reliance on *In re Facebook, Inc., Consumer Privacy User Profile Litigation*, 354 F. Supp. 3d 1122 (N.D. Cal. 2019), is similarly misplaced.  In that case, the court emphasized that the lawsuit did not serve primarily "parochial" interests, because the claims concerned statewide injury arising from fraudulent practices.  *Id.* at 1135–36.  Setting aside that San Francisco's own cases reject the "parochial" test, *see, e.g., California ex rel. L.A. City Att'y v. Monsanto Co.*, 2022

WL 2355195, at *5 (C.D. Cal. June 30, 2022), the remedies sought by San Francisco here *are* primarily parochial—San Francisco seeks abatement and costs relating specifically to San Francisco, and seeks civil penalties that will be paid into its coffers alone. *See* Compl. at 60.

*Third*, many of San Francisco's cases misread precedent as establishing that the State is the real party in interest whenever a claim vindicates public interests rather than private interests. *See, e.g.*, *California v. HomeAway.com, Inc.*, 2023 WL 2497862, at *2 (C.D. Cal. Mar. 17, 2023) ("The public has a substantial and specific interest in enforcing consumer protection laws."); *California v. Purdue Pharma L.P.*, 2014 WL 6065907, at *3 (C.D. Cal. Nov. 12, 2014) (relying on the State's interest in combatting "direct harm to opioid users and indirect harm to communities in the form of increased crime rates, hospital utilization, joblessness and broken families"). Similarly, some of San Francisco's cases misconstrue *Nevada* as holding that the State is always the real party in interest for a consumer-protection claim unless the complaint primarily seeks "relief for a single individual." *HomeAway*, 2023 WL 2497862, at *4; *see also InComm Fin. Servs.*, 2024 WL 1281330, at *4 (relying on the conclusion that the proceedings "seek to assert statewide protections under the UCL and protect California consumers as a whole"); *California v. Exide Techs.*, 2014 WL 12607708, at *2 (C.D. Cal. Apr. 9, 2014) (relying on the request for civil penalties, because "such actions are not for the benefit of private parties"). As *Missouri Railway*, *Lucent*, and *Nevada* all make clear, that is not the right inquiry.

Although it is true that a lawsuit that advances purely individualized, private interests will not implicate the State as a real party, the State's general interest in the advancement of the public good does not suffice either. In some sense, "the purpose of *all* litigation is to preserve and enforce rights and secure compliance with the law of the state, either statute or common." *Missouri Railway*, 183 U.S. at 60 (emphasis added). Indeed, all UCL litigation—including cases brought by private plaintiffs—purports to vindicate public interests. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 320 (2011) (noting that the purpose of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services" (citations omitted)); *Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*, 965 F. Supp. 2d 1141, 1154 (E.D. Cal. 2013) ("[A] UCL claim fails if it lacks any connection to the protection of fair competition or the

general public." (citation omitted)).  That does not mean that the State is the real party in interest in all cases in which a UCL claim is asserted, thereby defeating diversity in scores of cases.  To hold otherwise would stretch the real-party-in-interest doctrine beyond all limits, in contravention of *Missouri Railway*.

*Finally*, several of San Francisco's cases incorrectly assume that statutory language describing the State's interest in a lawsuit establishes real-party-in-interest status for purposes of diversity jurisdiction.  *See Monsanto*, 644 F. Supp. 3d at 571 ("[T]he applicable substantive law indicates that California is a real-party-in-interest."); *Purdue Pharma*, 2014 WL 6065907, at *3 ("UCL and FAL actions brought by local prosecutors are brought 'in the name of the people of the State of California.'"); *Exide Techs.*, 2014 WL 12607708, at *2 (emphasizing that the statute "authorizes the attorney for [the agency] to bring an action in the name of the people of the State of California" (quotation marks omitted)).  It does not.

Although the Ninth Circuit has acknowledged that "substantive state law" can be relevant to the real-party-in-interest analysis, *Lucent*, 642 F.3d at 738 (citation omitted), it has cautioned against deferring to state statutes describing the *form* of a proceeding, because federal law controls the question of which party is the real party in interest—a state statute's "pronouncement of the real party in interest is not binding on courts for the purposes of diversity jurisdiction," *id.* at 739 n.7 (citation omitted).  Accordingly, it may be that "California is a real party in interest for the purposes of standing," but that does not establish real-party-in-interest status for purposes of diversity jurisdiction if, as here, the "articulated interests are the very general governmental interests that the Supreme Court has stated cannot satisfy the diversity requirement."  *Id.* at 738 (alteration and quotation marks omitted); *see also id.* at 738 n.5 ("It seems logical that a state can possess standing to bring forth a claim, but lack status as a real party in the controversy for the purposes of diversity jurisdiction.").  Again, it is the "essential nature"—not the bare form—of the complaint that controls.  *Nevada*, 672 F.3d at 670 (quotation marks omitted).  The mere device of styling an action as brought "in the name of" the State therefore does not defeat diversity jurisdiction.

## C.   San Francisco's Remaining Arguments Are Misplaced

San Francisco raises three other arguments, each of which misses the mark.

*First*, it is immaterial that San Francisco brought this lawsuit pursuant to an express statutory delegation of authority.  *See* Mot. at 6.  A "state cannot possess the ability to defeat federal jurisdiction . . . merely by enacting legislation pursuant to its police powers."  *Lucent*, 642 F.3d at 739 n.6 (citation omitted).  Accordingly, "the language of Section 17204 granting public prosecutors authority to sue on behalf of the People does not automatically make the state a real party in interest after *Lucent*."  *N. Tr. Corp.*, 2012 WL 12888851, at *3 (citations omitted).  *Nevada* does not hold otherwise.  *Cf.* Mot. at 5.  That case observed only that there was "no doubt that the Attorney General ha[d] statutory authority to pursue" the relevant claims—an unremarkable fact that distinguished the case from others in which that issue *was* disputed.  *Nevada*, 672 F.3d at 670.  The delegation of prosecutorial authority does not transform San Francisco's interests into the State's interests.  Indeed, unlike an Attorney General, the City Attorney is elected by San Francisco voters, accountable for the interests of San Francisco residents, and controls the litigation for San Francisco's benefit.

*Second*, San Francisco's emphasis on the unavailability of certain remedies (such as civil penalties and certain injunctive relief) to private parties is misplaced.  *See* Mot. at 8.  In *Lucent* and *Nevada*, the choice for the real party in interest was between private litigants and the State.  *See Lucent*, 642 F.3d at 735; *Nevada*, 672 F.3d at 667–68.  Accordingly, whether the relief sought was available to similarly situated private parties was a relevant factor in determining the real party in interest.  Here, though, the choice is between a political subdivision and a State.  And there is no question that San Francisco is fully empowered by statute to seek the same panoply of remedies— including civil penalties and injunctive relief—as the State.  *See* Cal. Bus. & Prof. Code § 17206(f).  Accordingly, the fact that San Francisco is seeking some relief unavailable to private parties says nothing about which entity—San Francisco or the State—has the greater interest in this litigation.

*Finally*, San Francisco extensively discusses *Moor v. Alameda County*, claiming that Defendants' theory of removal "rests" on that case.  Mot. at 10.  Not so.  Defendants cited *Moor* only twice in their notice of removal—both times for the uncontroversial proposition that a political subdivision (such as a city or county) is a citizen of its State for purposes of diversity jurisdiction.

*See* Notice of Removal ¶¶ 7, 27. *Moor* does not address the broader question of whether the State or San Francisco is the real party in interest, and Defendants have never claimed otherwise.

## **CONCLUSION**

This Court should deny Plaintiff's Motion to Remand.

Dated:    February 11, 2026

Respectfully submitted,

*/s/ Andrew S. Tulumello*
Andrew S. Tulumello (Bar No. 196484)
drew.tulumello@weil.com
Arianna Scavetti (*pro hac vice* forthcoming)
arianna.scavetti@weil.com
Claire L. Chapla (Bar No. 314255)
claire.chapla@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: (202) 682-7000

Brian G. Liegel (*pro hac vice* forthcoming)
brian.liegel@weil.com
WEIL, GOTSHAL & MANGES LLP
1395 Brickell Avenue, Suite 1200
Miami, FL 33131
Tel: (305) 577-3180

*Attorneys for Defendant PepsiCo, Inc.*

*/s/ Adriane Peralta*
Adriane Peralta (Bar No. 304357)
adriane.peralta@sidley.com
SIDLEY AUSTIN LLP
350 S. Grand Avenue
Los Angeles, CA 90071
Tel: (213) 896-6132
Fax: (213) 896-6600

Michelle A. Ramirez (*pro hac vice*)
michelle.ramirez@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

*Attorneys for Defendant The Kraft Heinz Company*

*/s/ Laura Vartain Horn*
Laura Vartain Horn (Bar No. 258485)
laura.vartain@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street, Suite 2700
San Francisco, CA 94104
Tel: (415) 439-1625

Jessica Davidson (*pro hac vice* forthcoming)
jessica.davidson@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4757
Fax: (212) 446-4900

Jordan Michael Schwartz (*pro hac vice* forthcoming)
jordan.schwartz@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Ave NW
Washington, DC 20004
Tel: (202) 389-3358

*Attorneys for Defendant Mondelēz International, Inc.*

*/s/ Tarifa B. Laddon*
Tarifa B. Laddon (Bar No. 240419)
tarifa.laddon@faegredrinker.com
Gabriel J. Niforatos (Bar No. 359417)
gabriel.niforatos@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California 90067
Tel: (310) 203-4000
Fax: (310) 229-1285

Sarah L. Brew (*pro hac vice*)
sarah.brew@faegredrinker.com
Tyler A. Young (*pro hac vice*)
tyler.young@faegredrinker.com
Rory F. Collins (*pro hac vice*)
rory.collins@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901

1
2

Tel: (612) 766-7000
Fax: (612) 766-1600

3

*Attorneys for Defendant Post Holdings, Inc.*

4

*/s/ Angela M. Spivey*

5

Angela M. Spivey (*pro hac vice*)
angela.spivey@alston.com

6

Andrew G. Phillips (*pro hac vice*)
andrew.phillips@alston.com

7

Jamie S. George (*pro hac vice*)
jamie.george@alston.com

8

ALSTON & BIRD LLP
1201 West Peachtree St.

9

Atlanta, GA 30309

10

Tel: (404) 881-7000

11

Rachel E. K. Lowe (Bar No. 246361)
rachel.lowe@alston.com

12

ALSTON & BIRD LLP
350 South Grand Avenue

13

51st Floor
Los Angeles, CA 90071

14

Tel: (213) 576-1000

15

*Attorneys for Defendant The Coca-Cola Company*

16

17

*/s/ David T. Biderman*

David T. Biderman (Bar No. 101577)

18

dbiderman@perkinscoie.com
PERKINS COIE LLP

19

505 Howard St. Suite 1000
San Francisco, CA 94105

20

Tel: (415) 344-7000
Fax: (415) 344-7050

21

22

Joshua Patashnik (Bar No. 295120)
jpatashnik@perkinscoie.com

23

PERKINS COIE LLP
11452 El Camino Real, Suite 300

24

San Diego, CA 92130-2594
Tel: (858) 720-5700

25

Fax: (858) 720-5799

26

27

Natalie K. Sanders (Bar No. 329916)
nsanders@perkinscoie.com

PERKINS COIE LLP

28

1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721

Tel: (310) 788-9900
Fax: (310) 788-3399

*Attorneys for Defendant General Mills, Inc.*

 /s/ Perlette M. Jura
Perlette M. Jura (Bar No. 242332)
pjura@gibsondunn.com
Michael Holecek (Bar No. 281034)
mholecek@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel: (213) 229-7000

Jason Meltzer (*pro hac vice* forthcoming)
jmeltzer@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Tel: (202) 955-8500

Trenton H. Norris (Bar No. 164781)
trent.norris@hoganlovells.com
HOGAN LOVELLS US LLP
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Tel: (415) 640-5765

Lauren S. Colton (*pro hac vice*)
lauren.colton@hoganlovells.com
Julie R. Schindel (*pro hac vice*)
julie.schindel@hoganlovells.com
HOGAN LOVELLS US LLP
100 International Drive, Suite 2000
Baltimore, MD 21202
Tel: (410) 659-2700

*Attorneys for Defendant Nestlé USA, Inc.*

 /s/ Alexander M. Smith
Alexander M. Smith (Bar No. 295187)
asmith@jenner.com
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071
Tel: (213) 239-2262

Kate T. Spelman (Bar No. 269109)
kspelman@jenner.com
JENNER & BLOCK LLP
2029 Century Park East, Suite 1450
Los Angeles, CA 90067
Tel: (213) 239-2246

Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
Andrianna D. Kastanek (*pro hac vice* forthcoming)
akastanek@jenner.com
John F. Ward (*pro hac vice* forthcoming)
jward@jenner.com
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
Tel: (312) 923-2765

*Attorneys for Defendant WK Kellogg Co*

*/s/ Stephen D. Andrews*
Stephen D. Andrews (Bar No. 205691)
sandrews@wc.com
Dane H. Butswinkas (*pro hac vice* forthcoming)
dbutswinkas@wc.com
WILLIAMS & CONNOLLY LLP
680 Maine Ave, S.W.
Washington, DC 20024
Tel: (202) 434-5000

*Attorneys for Defendants Kellanova and Mars, Incorporated*

*/s/ Raymond A. Cardozo*
Raymond A. Cardozo (Bar No. 173263)
rcardozo@reedsmith.com
Steven J. Boranian (Bar No. 174183)
sboranian@reedsmith.com
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, CA 94105-3659
Tel: (415) 543-8700

Stephen J. McConnell (Bar No. 128630)
smcconnell@reedsmith.com
REED SMITH LLP
Three Logan Square, 1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100

*Attorneys for Defendant Conagra Brands, Inc.*

1

## **E-FILING ATTESTATION**

2

I, Andrew S. Tulumello, am the ECF User whose ID and password are being used to file this

3

document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories

4

identified above has concurred in this filing.

5

6

     */s/   Andrew S. Tulumello*

7

     Andrew S. Tulumello

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28