UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>KRAFT HEINZ COMPANY, et al.,<br><br>Defendants. | Case No. 26-cv-00183-JST<br><br>**ORDER REMANDING ACTION**<br>Re: ECF No. 50 |

Before the Court is the Plaintiff's motion to remand. ECF No. 50. The Court will grant the motion.

## I.      BACKGROUND

On December 2, 2025, the People of the State of California, acting by and through San Francisco City Attorney David Chiu, filed this complaint in state court. ECF No. 1-2 at 2. The complaint alleges that the nine defendant food manufacturers designed ultra-processed foods ("UPFs") to be addictive and marketed them aggressively to children and vulnerable communities, despite knowing that UPFs cause various chronic diseases and other health risks. *Id*. ¶¶ 5–12, 61–79, 203–10. The complaint also describes a public health crisis in San Francisco allegedly caused by UPFs, detailing residents' struggles with obesity and diabetes and the corresponding healthcare costs incurred by the City. *Id*. ¶¶ 219–33. Bringing claims for public nuisance and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq., *id*. ¶¶ 234–56, it seeks in relevant part (1) a permanent injunction requiring Defendants to cease their unlawful practices and implement corrective measures statewide, (2) a permanent injunction prohibiting Defendants from maintaining the public nuisance in San Francisco, plus costs to abate such

nuisance; and (3) civil penalties under California Business and Professions Code Section 17206,[1] *id*. at 79.

On January 7, 2026, Defendants removed the action to this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332. ECF No. 1. Plaintiff moved to remand on January 28, 2026. ECF No. 50. Defendants opposed, ECF No. 67, and Plaintiff replied, ECF No. 68. The Court held a hearing on April 23, 2026.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1446, a defendant may remove a civil action from state to federal court if the federal court has subject matter jurisdiction over the case. *See also* 28 U.S.C. § 1441(a). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992); *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008); *see* 28 U.S.C. § 1441. "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Gaus*, 980 F.2d at 566 (citing *Nishimoto v. Federman–Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)). It is a "longstanding, near-canonical rule that the burden on removal rests with the removing defendant." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006). Jurisdiction is assessed based upon the operative pleadings. *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025).

Federal courts have diversity jurisdiction over civil actions where each plaintiff is a citizen of a different state than each defendant and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). A State is not a "citizen" for purposes of 28 U.S.C. § 1332. *Missouri, K. & T. Ry. Co. of Kansas v. Hickman*, 183 U.S. 53, 57 (1901) ("*Missouri Railway*"). Accordingly, actions in which a State is the real party in interest cannot be removed to or sustained in federal court on diversity grounds. *Moor v. Alameda Cnty.*,

---

[1] In an apparent typographical error, the complaint references Section 17204 instead of Section 17206, but the former statute does not provide for civil penalties. ECF No. 1-2 at 63.

411 U.S. 693, 717 (1973); *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014).

Examining the case "as a whole," courts in this circuit identify the real party in interest by considering the "essential nature and effect" of the proceeding. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012); *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 740 (9th Cir. 2011). Where the state has no more than a "general interest . . . on behalf of all its citizens and their welfare," it is not a real party to the controversy for the purposes of defeating diversity jurisdiction. *Bank of Am.*, 672 F.3d at 670 (quoting *Lucent*, 642 F.3d at 737); *see also Missouri Railway*, 183 U.S. at 60 (holding that "general governmental interest[s]" such as those "in the welfare of all its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws," do not suffice to make a state the real party in interest to a controversy). In contrast, "a 'substantial state interest' separate and distinct from" and more than "merely 'tangential'" to the relief sought on behalf of any individuals may suffice. *Bank of Am.*, 672 F.3d at 670.

In *Lucent*, the California Department of Fair Employment and Housing ("DFEH"), suing on behalf of an individual aggrieved employee for violations of the Fair Employment and Housing Act ("FEHA"), sought remand to state court. 642 F.3d at 734. FEHA's text recites California's interest in averting employment discrimination, which "foments domestic strife and unrest, deprives the state of the fullest utilization of its capacities for development and advancement, and substantially and adversely affects the interest of employees, employers, and the public in general." *Id*. at 738 (quoting Cal. Gov't Code § 12920). The court concluded, however, that these interests were the very "general governmental interest[s]" held insufficient to satisfy the real-party-in-interest requirement in *Missouri Railway*. *Id*. The court next rejected DFEH's argument that the equitable relief sought supported remand, because although DFEH sought an order requiring the employer to implement anti-discrimination policies and training, "most of these forms of equitable relief could be obtained by the individual aggrieved." *Id*. at 739. Having rejected both grounds advanced by DFEH for finding the state to be the real party in interest, the Ninth Circuit upheld the district court's determination that it possessed jurisdiction. *Id*. at 740.

United States District Court
Northern District of California

The following year, the Ninth Circuit distinguished *Lucent* in deciding *Bank of America*. "Unlike the California DFEH, which sued on behalf of a *single* aggrieved employee, here, the Nevada Attorney General sued to protect the hundreds of thousands of homeowners in the state allegedly deceived by Bank of America, as well as those affected by the impact of Bank of America's alleged frauds on Nevada's economy." 672 F.3d at 670 (emphasis in original). The court observed that "Nevada has been particularly hard-hit by the current mortgage crisis, and has a specific, concrete interest in eliminating any deceptive practices that may have contributed to its cause." *Id*. In addition to "its interest in protecting the integrity of mortgage loan servicing," *id*., "'the State has an interest in the enforcement of its own state court judgment and its consumer fraud laws,'" *id*. at 671 (quoting *Arizona ex rel. Horne v. Countrywide Fin. Corp.*, No. CV–11–131–PHX–FJM, 2011 WL 995963, at *3 (D. Ariz. Mar. 21, 2011)). Finally, the form of relief sought "strengthened" the state's "strong and distinct interest" in the litigation because it sought civil penalties not available to individual consumers and injunctive relief, with respect to which the state faced a much lower standard of proof than would be required from individual consumer plaintiffs. *Id*. at 671–72.

At first blush, *Lucent* and *Bank of America* are difficult to reconcile. *Lucent* deemed the state's interests in avoiding "strife and unrest," fully utilizing the workforce's "capacities for development and advancement," and otherwise protecting the "interest of employees, employers, and the public in general" to be too general to make the state the real party in interest under *Missouri Railway*. 642 F.3d at 738. By contrast, *Bank of America* deemed the protection of deceived homeowners and others affected by the economic impacts of mortgage fraud, the protection of "the integrity of [the state's] mortgage loan servicing," and "the enforcement of its own state court judgment and its consumer fraud laws" to be sufficient state interests. 672 F.3d at 670–71. But the interests described in *Bank of America* are not clearly more sovereign or specific to the state than those described in *Lucent*, which that opinion terms "quasi-sovereign." *See Lucent*, 642 F.3d at 737 n.2 (noting that quasi-sovereign interests, such as those in abating a public nuisance or protecting the economic well-being of its citizens, do not satisfy *Missouri Railway*'s relief requirement).

Observing this tension, other district courts have read the cases together to hold that a state's quasi-sovereign interests are not alone sufficient to satisfy *Missouri Railway* unless they are the primary interests at issue in the case. *See California by & Through Chiu v. InComm Fin. Servs., Inc.*, No. 3:23-CV-06456-WHO, 2024 WL 1281330, at *3 (N.D. Cal. Mar. 26, 2024); *see also Cnty. of San Mateo v. Monsanto Co.*, 644 F. Supp. 3d 566, 570 (N.D. Cal. 2022) ("*Standing alone*, a state's general, governmental interests . . . are insufficient." (emphasis added)). Nothing in *Missouri Railway* or *Lucent* contradicts this approach. While *Missouri Railway* held that the state's general "governmental interest in the welfare of all its citizens" and in "securing compliance with all its laws" is insufficient to make the state the party in interest, it did so because "if that were so[,] the state would be a party in interest in all litigation." *Missouri Railway*, 183 U.S. at 60. And that case was "a suit to compel compliance with an order of the railroad commissioners in respect to rates and charges" for travel over the Boonville bridge, so the effects of the suit were narrowly cabined to the railway company and travelers over that bridge. *Id*. at 59. Similarly, *Lucent* was essentially an employment suit on behalf of a single aggrieved employee, so that only the employer and any employees would be affected. 642 F.3d at 739–40. And while the case held that the social interests articulated by FEHA were too general on their own to support a finding that the state was the real party in interest, the court did not end its analysis there, but went on to analyze the relief sought before concluding that DFEH was not the real party in interest. *Id*. These cases make clear that the mere existence of a quasi-sovereign interest cannot alone transform the state into the real party in interest, but neither does the state's quasi-sovereign interest disqualify it from filling that role.

This Court has previously identified three factors to consider when identifying whether the state's interest is sufficiently specific and concrete under Ninth Circuit precedent: "the nature of the 'substantive state law' at issue, *Lucent*, 642 F.3d at 738, the extent to which the challenged conduct injures the state 'as a whole,' *[Bank of Am.]*, 672 F.3d at 670, and the extent to which the complaint seeks 'substantial relief that is available to [the state] alone,' *id.* at 672; *see also Lucent*, 642 F.3d at 739." *Cnty. of San Mateo*, 644 F. Supp. 3d at 570.

5

## III.    DISCUSSION

The sole issue before the Court is whether the People of the State of California or the City of San Francisco is the real plaintiff in interest.

### A.    Strength and Specificity of the Operative State Interests

The complaint alleges harm to state interests in protecting consumers, deterring unlawful business practices, and ensuring the health of the citizenry against diabetes, cancer, and heart disease.  "The public has a substantial and specific interest in enforcing consumer protection laws." *California v. HomeAway.com, Inc.*, No. 222CV02578FLAJPRX, 2023 WL 2497862, at *2 (C.D. Cal. Mar. 14, 2023).  That interest is a "strong state interest," unlike the "overly 'general' interest discussed in *Lucent*."  *InComm*, 2024 WL 1281330, at *4; *see also Vasquez v. Super. Ct.*, 4 Cal. 3d 800, 808 (1971), *superseded by statute on other grounds as stated in Flores v. Southcoast Auto. Liquidators, Inc.*, 17 Cal. App. 5th 841, 851 (2017) ("Protection of unwary consumers from being duped by unscrupulous sellers is an exigency of the utmost priority in contemporary society.").

The state also has a particularly strong interest in ending public health crises.  *See California v. Purdue Pharma L.P.*, No. SACV 14-1080-JLS DFM, 2014 WL 6065907, at *3 (C.D. Cal. Nov. 12, 2014) (likening California's interest in ending the opioid epidemic, with its "indirect harm to communities in the form of increased crime rates, hospital utilization, joblessness and broken families," to Nevada's interest in *Bank of America*); *County of San Mateo*, 644 F. Supp. 3d at 572 (describing the state's interest in abating the "widespread" public health risk created by pollution in the San Francisco Bay because "numerous communities throughout California rely on the San Francisco Bay as a food source or for recreation").  Such epidemics also harm the state directly by straining its resources.  *See* ECF No. 1-2 ¶ 231 ("Treatment for diabetes contribute[s] to San Francisco's health care costs."); *id*. ¶ 232 ("San Francisco has initiated diabetes prevention programs for its employees.").

Defendants argue that a state cannot establish real party status based on such "quasi-sovereign" interests, but Defendants' interpretation overreads *Missouri Railway* and *Lucent* and disregards the Ninth Circuit's more recent pronouncement in *Bank of America*.  Defendants also

United States District Court
Northern District of California

cite a single in-circuit case—*California v. Northern Trust Corporation*—for the proposition that UCL claims are insufficiently specific and concrete to satisfy *Lucent*. ECF No. 67 at 15 (citing No. CV1201813DMGFMOX, 2012 WL 12888851, at *4 (C.D. Cal. Dec. 19, 2012)). *Northern Trust* does not help Defendants. That court noted that the claims at issue "stem[med] from the contractual relationship between" the Los Angeles City Employees' Retirement System ("LACERS") and the defendants, with no effect on consumers generally. 2012 WL 12888851, at *4. Furthermore, the primary objective of the suit was restitution, which would benefit only LACERS and its beneficiaries and was not uniquely available to the state. *Id*.

Defendants also cite an out-of-circuit case interpreting California law that supports their position, but multiple courts within this district have considered and rejected its reasoning. *Compare In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 238 F. Supp. 3d 723, 729 (E.D. Pa. 2017), *with Incomm*, 2024 WL 1281330, at *6, *and In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 354 F. Supp. 3d 1122, 1135 (N.D. Cal. 2019). Specifically, the Pennsylvania court "concluded that the State was not the real party in interest because 'the relief sought would not inure to the benefit of the state alone,' even though . . . that is not the test in the Ninth Circuit." *In re Facebook*, 354 F. Supp. 3d at 1135.[2] It also "relied heavily on the fact that penalties sought by the county prosecutors would go to the county rather than the State, without any analysis of the role of District Attorneys in California, or of the purpose of California's consumer protection laws and the way they operate." *Id*.

In short, none of Defendants' cited authorities persuade the Court to diverge from its peer district courts in *Incomm*, *HomeAway.com*, and *Purdue Pharma* or to disregard the Ninth Circuit's pronouncement in *Bank of America*. The interests identified in the complaint weigh in favor of the state as the real party in interest.

---

[2] This language is drawn from *Missouri Railway*, but "as numerous courts have explained, *Missouri Railway* stands for the proposition that a state is a real-party-in-interest when the benefits inure to it alone; the case does not hold that that is the *only* circumstance in which a state may be a real-party-in-interest." *County of San Mateo v. Monsanto Co.*, 644 F. Supp. 3d 566, 573 (N.D. Cal. 2022).

**B.    Substantive State Law**

The applicable substantive law also supports California as the real party in interest.  The UCL grants enforcement authority to the California Attorney General and certain district attorneys, city prosecutors, and city attorneys.  Cal. Bus. & Prof. Code §§ 17204, 17206; *see also Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 503 (Cal. App. 2003).  Notably, such enforcement authority is wielded "in the name of the people of the State of California."  Cal. Bus. & Prof. Code §§ 17204 (authorizing actions for injunctive relief by certain officials in the name of the people), 17206(a) (authorizing civil penalties in the name of the people).  Under California law, the "People of the State of California" and the state itself are synonymous.  *See* Cal. Gov. Code § 100 ("The sovereignty of the state resides in the people thereof," and all processes and prosecutions must be conducted in the name and by the authority of "The People of the State of California"); *see also People of the State of Cal. v. Glen Arms Estate, Inc.*, 230 Cal. App. 2d 841, 854 n.10 (1965) (noting that "the sovereignty of the state is in the people" and "the 'People of the State' and 'The State' [are] descriptive of the same sovereignty'").  As such, the UCL expressly provides for suit by municipal authorities on behalf of the state as a whole, exercising the state's sovereign authority.

Defendants argue that the statutory delegation of authority to municipalities to wield the sovereignty of the state is "immaterial."  ECF No. 67 at 19.  The opposite is true.  While a "state cannot possess the ability to defeat federal jurisdiction . . . merely by enacting legislation pursuant to its police powers," *Lucent*, 642 F.3d at 739 n.6 (citation omitted), the "statutory language is helpful in analyzing the State's interest under the substantive law," *id*. at 739 n.7.  And here, "the statutory authorization to bring this suit on behalf of California shows that the 'essential nature' of the proceeding benefits state interests."  *InComm*, 2024 WL 1281330, at *4.  Numerous district courts have found that this feature of the UCL—providing that actions by government entities to enforce it are "on behalf of the People"—weighs in favor of the state as the real party in interest.  *See, e.g.*, *HomeAway.com*, 2023 WL 2497862, at *2; *Purdue Pharma*, 2014 WL 6065907, at *3.  This Court follows suit.

### C.    Statewide Scope of the Injuries

In Defendants' view, San Francisco is the real party in interest because the alleged injuries are specific to San Francisco.  ECF No. 67 at 10.  They frame the complaint as including "several hundred allegations concerning Defendants' nationwide production and marketing of food and beverage products generally" followed by "one single section discussing the relevance of that alleged conduct to the claims asserted here," all of which pertain to San Francisco.  *Id.*  In other words, Defendants imply that most of the complaint's allegations do not pertain to California because they are nationwide.  On the contrary, the nationwide claims at issue necessarily pertain to California generally because they allege such widespread food manufacturing and marketing practices.  *See* ECF No. 1-2 ¶ 8 ("UPF make up more than 70% of grocery store products and more than half of the diets for individuals in the U.S. UPF sit on the pantry shelves of nearly every household in America, and American children get two-thirds of their daily energy from UPF.").

The addition of one section specific to San Francisco—i.e., 15 paragraphs of a 256-paragraph complaint—does not suggest that the City is the real party in interest.  In *Bank of America*, for instance, the Court noted that Las Vegas had the second-highest foreclosure rate in the nation.  672 F.3d at 671.  But that fact was evidence in *favor* of a finding of statewide effect— "the devastating effect of the foreclosure crisis on Nevada."  *Id.*  Thus, the focus on Las Vegas did not meaningfully alter the "essential nature and effect" of the proceeding as one in the interest of the state itself.  672 F.3d at 671.  In fact, it was in part because of the impact to Las Vegas that the Court could claim Nevada was "hard-hit" by the effects of the defendants' conduct.  *Id.* at 670.  By analogy, the San Francisco-specific claims here can be read to strengthen the *state's* interest by showing one way in which it faces particularly grievous harm.

In reaching this conclusion, the Court follows other district courts that have concluded that the state was the real party in interest even where the claims and relief were cabined to a particular municipality.  In *HomeAway.com*, for instance, the City of Los Angeles sued a short-term rental platform under the UCL for violating an ordinance prohibiting hosting platforms from processing short-term rental transactions involving unregistered hosts.  2023 WL 2497862, at *1.  Rejecting the defendant's argument that the city was the real party in interest, the court held that "the fact

that the relief sought in this action would primarily benefit the City, as opposed to the State, is not dispositive." *Id*. at *3.

Here, the complaint clearly alleges statewide harm and the Court finds that this factor supports finding the state to be the real party in interest.

### D.    Relief Sought

The parties raise two related issues concerning the nature of the relief sought: (1) whether the primary objective of the suit is statewide or local to San Francisco; (2) whether the nature of the relief available weighs in favor of the state or San Francisco as the real party in interest.  The Court concludes that the statewide injunction request is the primary relief sought and that the available forms of relief slightly favor finding the state to be as the real party in interest.

As Ninth Circuit authority makes clear, classifying the relief sought in a case as primary or tangential is paramount to the real party in interest analysis.  *See Lucent*, 642 F.3d at 739 ("Any remaining interests that are unique to DFEH's lawsuit . . . are tangential to the alleged relief sought for [the aggrieved employee] and, thus, cannot render DFEH a real party to the controversy under these circumstances."); *Bank of Am.*, 672 F.3d at 671 ("That individual consumers may also benefit from this lawsuit does not negate Nevada's substantial interest in this case." (citation modified)).  Defendants assert that the statewide injunctive request is merely "tack[ed] on" to a suit "to vindicate alleged harms in San Francisco through relief principally directed at San Francisco."  ECF No. 67 at 11.  Plaintiff suggests that the request for injunctive relief abating the nuisance in San Francisco was "tacked on" to the UCL claims, which seek statewide relief and protect statewide interests.  ECF No. 50 at 10.

The Court concludes that the "essential nature and effect" of the case is one seeking statewide injunctive relief requiring Defendants to cease and ameliorate the effects of their harmful practices.  *See* ECF No. 1-2 at 63 ¶ 1.  First, the vast majority of the allegations in the complaint are not San Francisco-specific, but statewide.  Relatedly, the concerns animating the complaint—that vulnerable families are becoming addicted to harmful foods—would naturally be of interest to municipal and state authorities across the state.  Finally, the injunction request specific to San Francisco, which would prohibit Defendants from maintaining the public nuisance

created by their UPFs, appears in practical effect to largely duplicate the statewide requests. And while the complaint also seeks civil penalties, the Court concludes that those penalties are also secondary to the primary injunction request, as (1) both rely on the success of the underlying UCL claims but (2) civil penalties are punitive rather than protective and remediating. *See In re Facebook*, 354 F. Supp. 3d at 1134; *HomeAway.com*, 2023 WL 2497862, at *3.

Having concluded that the primary relief sought is statewide and therefore favors the state as the real party in interest, the Court turns to the nature of the relief available. The parties focus on two aspects of the statutory provisions relating to relief: the lower burden placed on government entities seeking an injunction under the UCL and the role of civil penalties.

In seeking injunctive relief, Plaintiff enjoy a relaxed standard for establishing standing compared to that for private individuals bringing UCL claims. *See* Cal. Bus. & Prof. Code § 17535. A similar statutory feature was key to the outcome in *Bank of America*, in which "the State face[d] a much lower standard of proof than would be required for a lawsuit brought by individual consumers." *See* 672 F.3d at 672. However, in *Bank of America*, the relevant comparison was to individual consumers; the lower bar for injunctive claims constituted "substantial" relief uniquely available to the state but not to consumers. *Id.* Here, both the San Francisco City Attorney and the California Attorney General benefit from a lower standing bar. For that reason, this Court disagrees with other courts finding this feature of the UCL to favor the state as the real party in interest in comparison to the municipality bringing suit. *See Purdue Pharma*, 2014 WL 6065907, at *3; *InComm*, 2024 WL 1281330, at *6. This factor weighs neither in favor of nor against finding the state to be the real party in interest.

Under the UCL, civil penalties in a suit brought by a city and county like San Francisco flow to the treasury of that entity. Cal. Bus. & Prof. Code § 17206(f). Nonetheless, the UCL requires that such funds be exclusively used "for the enforcement of consumer protection laws," which "advance[s] the interests of the State." *See HomeAway*, 2023 WL 2497862, at *3 (citing Cal. Bus. & Prof. Code § 17206(c)(4)); *see also Purdue Pharma*, 2014 WL 6065907, at *3 ("While Defendants note that civil penalties paid under the UCL and FAL will go to the Orange and Santa Clara County treasuries—not to the State—this is immaterial in light of the fact that any

United States District Court
Northern District of California

recovery may be used only for the future enforcement of California's consumer protection laws, thereby furthering the interests of the State, not the Counties."). Defendants argue that "[w]hat matters here is that any civil penalties would go *to* San Francisco for "exclusive use *by*" San Francisco, but they ignore the numerous courts within this circuit that have found that UCL civil penalties support finding the state to be the real party in interest. ECF No. 67 at 11 (emphasis in original). In fact, they only cite out-of-circuit authorities not pertaining to the UCL at all, all of which long predate *Lucent* and *Bank of America*. *Id*. at 11–12.

Moreover, because "the purpose of a civil penalty is not to compensate a victim but to punish the wrongdoer and deter future wrongdoing by others," "it serves the interests of the statute . . . equally whether the penalties end up in [the] state or county treasury." *In re Facebook*, 354 F. Supp. 3d at 1134 (reaching that conclusion in the context of Consumer Fraud Act claims); *HomeAway.com*, 2023 WL 2497862, at *3 (applying *In re Facebook* to the UCL context). Because civil penalties would flow to San Francisco but serve the state, the Court finds that this factor slightly favors finding the state to be the real party in interest.

**CONCLUSION**

The nature and specificity of the state interests, the relevant statutory provisions, the scope of the alleged injuries, and the nature of relief sought all support finding the state to be the real party in interest.[3] Defendants cite no on-point, in-circuit authority to support their position and do not adhere to the Ninth Circuit's most recent pronouncement in *Bank of America*. Given these considerations and the unanimity or near-unanimity among district courts in this circuit on the issues presented, the Court has little difficulty ordering this case remanded.

/ / /

/ / /

---

[3] Defendants also suggest that the state is not the real party in interest because the California Attorney General is not involved in the suit. ECF No. 67 at 12. They cite no authority for this proposition, however, relying on (1) a 115-year-old Ninth Circuit case holding that the party with "absolute control of the suit" is often the real party in interest, *see Atchison, T. & S.F. Ry. Co. v. Phillips*, 176 F. 663, 668 (9th Cir. 1910); and (2) the dissent in *Lucent*, 642 F.3d at 749, which again holds only that a party is interested, for diversity purposes, when it has some control over the litigation. Defendants also cite a variety of cases which were brought by the state's officers, none of which holds that state involvement is a necessary condition. ECF No. 67 at 13.

Plaintiff's motion to remand is granted.

**IT IS SO ORDERED.**

Dated: April 23, 2026

_____
JON S. TIGAR
United States District Judge